UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONI DROUIN,<br><br>    Plaintiff,<br><br>    v.<br><br>MARIA SKALLET, et al.,<br><br>    Defendants. | Case No. 15-cv-03694-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS FOURTH AMENDED COMPLAINT**<br><br>Re: Dkt. No. 94 |

On August 12, 2015, Plaintiff Toni Drouin filed the instant 42 U.S.C. § 1983 suit against Contra Costa County ("County") and Doe Defendants, alleging violations of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. (Compl., Dkt. No. 1.) On April 16, 2017, Plaintiff filed a fourth amended complaint against the County and individual Defendants Deputy Christina Rodriguez, Nurse Maria Skallet, Nurse Brenda Baldwin, Nurse Joung Soon Park, and Nurse Librada Bacalzo. (Fourth Amended Compl. ("FAC"), Dkt. No. 91.) Against these individual Defendants, Plaintiff also alleged violations of her Eighth Amendment right to be free from cruel and unusual punishment. (FAC ¶ 24.)

On April 27, 2017, the parties filed a stipulated dismissal of Defendants Park and Baldwin. (Dkt. No. 95.) Defendants Rodriguez and Bacalzo now move to dismiss Plaintiff's complaint against them. (Defs.' Mot., Dkt. No. 94.) Upon consideration of the parties' filings, as well as the arguments presented at the June 1, 2017 motion hearing, and for the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## I. BACKGROUND

### A. Factual Background

Plaintiff is partially paralyzed due to a spinal cord injury. (FAC ¶ 5.) This is "readily

apparent upon casual observation of [her] movements." (*Id.* ¶ 9.) On March 13, 2015, Plaintiff was in the County's custody, and was transferred from Martinez Jail to West County Detention Center. (*Id.* ¶ 8.) Although the Martinez Jail had appropriate handicapped facilities, the section of the West County Detention Center to which Plaintiff was transferred did not. (*Id.*)

During her processing, Plaintiff repeatedly informed Defendant Skallet about the nature of her disability, specifically regarding her medical need for a wheelchair. (*Id.* ¶ 10.) Defendant Skallet allegedly failed to properly note Plaintiff's need for a wheelchair, instead making a note that Plaintiff could "only walk with crutches." (*Id.*) Plaintiff was given crutches, which she could not use safely, instead of a wheelchair. (*Id.* ¶ 11.)

On March 15, 2015, Plaintiff fell and broke her femur bone, causing excruciating pain. (*Id.* ¶ 12.) Plaintiff alleges that she did not receive medical attention until four days later, despite her unbearable pain and repeated pleas for medical care. (*Id.* ¶ 13.) Plaintiff alleges that Defendant Rodriguez was present in Plaintiff's jail "pod" at the time Plaintiff fell, "which was accompanied by a loud popping sound when Plaintiff's femur bone fractured; the popping sound was loud enough to have been heard and was heard by everyone in the pod, including D[efendant] Rodriguez." (*Id.* ¶ 14.) Afterwards, Defendant Rodriguez ignored "Plaintiff's multiple pleas for medical care for her injury on March 15, 16, and 17, 2015." (*Id.*)

On the day of her injury, Plaintiff was examined by Nurse Park, who determined that there were no signs of fracture to Plaintiff's leg. (*Id.* ¶ 15.) On March 17, 2015, Plaintiff was examined by Nurse Baldwin, who likewise did not find a fracture but instead diagnosed Plaintiff as having a "knee injury." (*Id.* ¶ 16.)

Some days after Plaintiff's injury, Plaintiff was prescribed more powerful pain medication and became violently ill, nauseous, and was vomiting frequently. (*Id.* ¶ 17.) Plaintiff informed Defendant Bacalzo that she "had suffered a severe leg injury, had been prescribed medication that was making her sick, was experiencing extreme nausea and frequent vomiting, and that she was therefore requesting a modified diet to combat these symptoms . . . ." (*Id.*) Defendant Bacalzo failed to provide the modified diet, instead replying that "everyone gets the same food" and that Plaintiff would not receive "special treatment." (*Id.*)

1 As a result of severe infections from her injury, Plaintiff has been hospitalized repeatedly, and the affected leg may need to be amputated. (*Id.* ¶ 18.)

### B. Procedural Background

Plaintiff filed the instant action on August 12, 2015. On October 14, 2015, Defendants moved to dismiss the complaint. (Dkt. No. 9.) The Court granted in part and denied in part the motion, finding that Plaintiff had not alleged sufficient facts to state a viable *Monell* claim. (Mot. to Dismiss Ord., Dkt. No. 22.) Plaintiff filed an amended complaint on November 30, 2015, and Defendant County filed its answer on December 29, 2015. (Dkt. Nos. 23, 26.)

Plaintiff filed a third amended complaint on November 17, 2016, in which Plaintiff for the first time named the individual defendants. (Dkt. No. 54.) On February 8, 2017, the individual defendants moved to dismiss the third amended complaint against them. (Dkt. No. 62.) On April 4, 2017, the Court denied the motion as to Defendant Skallet, but granted the motion as to all other individual defendants. (Ord., Dkt. No. 84.)

On April 4, 2017, the County filed a motion for summary judgment as to all claims against the County. (Dkt. No. 86.) On April 16, 2017, Plaintiff filed her fourth amended complaint. On April 25, 2017, Plaintiff filed a notice of non-opposition to the motion for summary judgment, "conced[ing] that under the totality of the relevant facts disclosed through discovery and the controlling legal authority offered by the County Counsel, there no longer remains a triable issue of fact as to the liability of [the County]." (Dkt. No. 92 (emphasis and all caps omitted).) Accordingly, the Court granted the County's motion for summary judgment. (Dkt. No. 93.)

On April 27, 2017, Defendants Rodriguez and Bacalzo filed the instant motion to dismiss. That same day, the parties stipulated to the dismissal of Defendants Park and Baldwin from the case. (Dkt. No. 95.) On May 11, 2017, Plaintiff filed her opposition to the motion to dismiss. (Plf.'s Opp'n, Dkt. No. 102.) On May 17, 2017, Defendants filed their reply brief. (Defs.' Reply, Dkt. No. 103.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule

3

1  12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250
2  F.3d 729, 732 (9th Cir. 2001).

3  In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III. DISCUSSION

"The Eighth Amendment's prohibition of cruel and unusual punishment requires that

prison and jail officials take reasonable measures for the safety of inmates." *Mirabel v. Smith*, No. C 12-3075-SI, 2012 WL 5425407, at *1 (N.D. Cal. Nov. 6, 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).) "A prison or jail official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety." *Id.* (citing *Farmer*, 511 U.S. at 834.)

With respect to the first requirement, "[a] 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-60 (citations omitted).

As to the second requirement, to establish deliberate indifference, "a person is liable for denying a prisoner needed medical care only if the person knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of L.A.*, 833 F.3d 1060, 1077 (9th Cir. 2016). Furthermore, "[i]n order to know of the excessive risk, it is not enough that the person merely be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, he must also draw that inference." *Id.* at 1188 (internal modifications omitted). Thus, even "[i]f a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (citing *Jeffers v. Gomez*, 267 F.3d 895, 914 (9th Cir. 2001)); *see also Toguchi v. Chung*, 391 F.3d 1051, 1059 (9th Cir. 2004) ("there must be a *conscious* disregard of a serious risk of harm for deliberate indifference to exist").

### A. Defendant Rodriguez

Plaintiff alleges that Defendant Rodriguez "ignored and displayed deliberate indifference towards Plaintiff's multiple pleas for medical care for her injury on March 15, 16, and 17, 2015,"

even after she was present in Plaintiff's jail pod on March 15, 2015, when Plaintiff had "suffered her fall, which was accompanied by a loud popping sound when Plaintiff's femur bone fractured; the popping sound was loud enough to have been heard and was heard by everyone in the pod, including D[efendant] Rodriguez." (FAC ¶ 14.)

Defendants argue that first, the loud popping noise does not establish that Defendant Rodriguez had actual knowledge of a serious medical need. (Defs.' Mot. at 8.) Second, Defendant Rodriguez was entitled to rely on Nurse Park and Nurse Baldwin, as long as Defendant Rodriguez had no reason to doubt the appropriateness of Plaintiff's treatment by the nurses. (*Id.*) Finally, Defendant Rodriguez did not delay or impede the provision of medical assistance to Plaintiff, which caused her to suffer additional medical injury. (*Id.* at 9.) Plaintiff responds that Defendant Rodriguez was in a position to observe information that would lead a reasonable person to infer that Plaintiff had a serious medical need. (Plf.'s Opp'n at 8.) Plaintiff did not respond to Defendants' other arguments.

The Court finds that at the pleading stage, Plaintiff's allegations are inadequate. As Defendants point out, the popping sound alone does not necessarily indicate a fracture, particularly when there are no allegations that Defendant Rodriguez saw Plaintiff fall. At the hearing, Plaintiff argues that the fractured leg would have been visible to Defendant Rodriguez; such facts, however, were not alleged in the complaint. Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim against Defendant Rodriguez. The dismissal is with prejudice, as the Court's previous dismissal order already pointed out Plaintiff's failure to "allege any facts that would establish actual knowledge, such as visible indicia of her broken femur." (Ord. at 10.) Despite being on notice of this deficiency, Plaintiff still did not add any facts to this effect. Moreover, this is the fourth amended complaint, with the trial date imminent.[1] In light of these circumstances, the Court finds dismissal with prejudice to be appropriate.

### B.  Defendant Bacalzo

Plaintiff alleges that she informed Defendant Bacalzo that she "had suffered a severe leg

---

[1] The Court has already continued the trial once before, due to Plaintiff adding the individual Defendants. (*See* Dkt. Nos. 60-61.)

6

injury, had been prescribed medication that was making her sick, was experiencing extreme nausea and frequent vomiting, and that she was therefore requesting a modified diet to combat these symptoms." (FAC ¶ 17.) Despite this information, Defendant Bacalzo allegedly responded that "everyone gets the same food," and that Plaintiff would not receive "special treatment." (*Id.*)

Defendants argue that Plaintiff does not allege a serious medical need based on the nausea and vomiting. (Defs.' Mot. at 6.) Additionally, Defendants contend that Plaintiff fails to allege deliberate indifference, as there are no factual allegations that Defendant Bacalzo's decision to deny a modified diet was medically improper or that it was medically necessary to authorize the requested modified diet. (*Id.* at 7.) Finally, Defendants argue that there are no allegations that Defendant Bacalzo's failure to treat the nausea and vomiting caused Plaintiff harm. (*Id.* at 8.) In response, Plaintiff contends that Defendant "Bacalzo's indifference was found in the callous manner in which she declined to approve a modified diet," arguing that it was not true that everyone gets the same food and that Defendant Bacalzo's response "evinces a total lack of caring for discovering the root causes of Plaintiff's nausea and vomiting." (Plf.'s Opp'n at 6.)

The Court finds that Plaintiff fails to allege a serious medical risk based on the nausea and vomiting. Notably, Plaintiff does not dispute that nausea and vomiting do not constitute a serious medical need; instead, Plaintiff argues that a broken femur constitutes a serious medical condition. (*Id.*) The allegations against Defendant Bacalzo, however, are not based on the broken femur, but on the failure to treat the nausea and vomiting by prescribing a different diet. (FAC ¶ 17.) Thus, whether the broken femur constitutes a serious medical condition is not relevant to the claims against Defendant Bacalzo.

Multiple courts have found that nausea and vomiting generally do not constitute a serious medical need. For example, in *Kosloski v. Dunlap*, the plaintiff complained of a toothache, fever, and vomiting; it was later discovered that the plaintiff suffered from endocarditis. 347 Fed. Appx. 177, 180 (6th Cir. 2009). Although the parties agreed that endocarditis was a serious condition, the Sixth Circuit found no Eighth Amendment violation because the defendant had no reason to believe that the plaintiff had a serious medical condition based on the symptoms that were actually described to her. *Id.*; *see also Ross v. McGinnis*, No. 00-cv-275E(SR), 2004 WL 1125177, at *10

(W.D.N.Y. Mar. 29, 2004) ("Plaintiff's complaints of abdominal pain, vomiting, heartburn, constipation, body odor and extreme body heat did not constitute a serious medical need"); *O'Laughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990) (finding that the defendants' repeated failure to satisfy the plaintiff's request for aspirins and antacids to alleviate his headaches, nausea, and pain did not constitute a constitutional violation); *Burnett v. Dugan*, Civil No. 08-CV-1324-L(WVG), 2011 WL 1002171, at *9 (S.D. Cal. Feb. 23, 2011) (no serious medical need where the plaintiff alleged a "severe upset stomach" over three days). Of the courts that have found a serious risk, the nausea and vomiting were chronic and over a long period of time. *See Greeno v. Daley*, 414 F.3d 645, 650-51 (7th Cir. 2005) (finding a serious medical need where the plaintiff suffered severe heartburn and vomiting of blood for over two years); *Uribe v. McGuinness*, No. 1:07-cv-1064-GMS-PHX, 2010 WL 4722767, at *3 (E.D. Cal. Nov. 15, 2010) (finding a serious medical need where the plaintiff had frequent nausea and vomiting for a month, making him unable to eat full meals, think clearly, work a full day, or participate in recreational activities).

In the instant case, Plaintiff alleges she became violently ill, nauseous, and was vomiting frequently. (FAC ¶ 17.) Plaintiff does not allege that these symptoms were chronic or lasted a long period of time, *i.e.*, a month. Thus, Plaintiff fails to allege a serious medical need as to the nausea and vomiting.

At the hearing, however, Plaintiff presented a different theory altogether, arguing that Defendant Bacalzo's deliberate indifference was based not on the failure to give a modified diet, but on her failure to "dig deeper" into what was behind Plaintiff's complaints about the leg injury, nausea, and vomiting. Plaintiff also argued that Plaintiff requested a doctor, an allegation that was not in the complaint. Based on the actual allegations in the complaint, it is clear Plaintiff's complaints were focused on the nausea and vomiting, which was why "she was therefore requesting a modified diet to combat these symptoms." (FAC ¶ 17 (bold and italics omitted).) There are no allegations to suggest that Defendant Bacalzo should have known about the broken femur, and instead Plaintiff's contention that Defendant Bacalzo should have "dug deeper" would suggest that Defendant Bacalzo did not in fact know about the broken femur, which would therefore be insufficient to support a deliberate indifference claim. Given that Plaintiff's

8

complaints to Defendant Bacalzo were focused on the nausea and vomiting and how to remedy those symptoms specifically, and that Plaintiff has failed to allege that the nausea and vomiting rose to the level of a serious medical need, the Court GRANTS Defendants' motion to dismiss the claim against Defendant Bacalzo with prejudice.

### IV.  CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss, and dismisses the claim against Defendant Rodriguez and Defendant Bacalzo with prejudice.

IT IS SO ORDERED.

Dated: June 15, 2017

KANDIS A. WESTMORE
United States Magistrate Judge